IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

| | |
|---|---|
| SHARON D. PRUITT | \* |
| | \* |
| Plaintiff | \* |
| | \* |
| V. | \* |
| | \*   NO: 1:10CV00101 SWW |
| NEWPORT SPECIAL SCHOOL DISTRICT | \* |
| | \* |
| | \* |
| Defendant | |

**ORDER**

Sharon D. Pruitt ("Pruitt"), who is black, brings this employment discrimination lawsuit against her employer, the Newport Special School District ("the District"), claiming that the District failed to promote her based on her race. Before the Court is the District's motion for summary judgment (docket entries #13, #14, #15), Pruitt's response in opposition (docket entries #17, #18, #19), and the District's reply (docket entry #23). After careful consideration, and for reasons that follow, the motion for summary judgment is denied in part and granted in part.

**I.**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

During the events giving rise to this lawsuit, the District employed four superintendents: Ron Wilson, who held the office from July 2004 to March 2006; Ronnie Brown, who held the office from March 2006 to October 2009; Charles Vondran, who held the office from October 2009 to July 2010; and Larry Bennett, who took over as superintendent on July 1, 2010.

Originally hired as a high school science teacher, Pruitt has worked for the District since 1981. In 2003, Pruitt was promoted to the position of counselor at Newport High School ("NHS"), and in September 2004, Superintendent Wilson recommended that the school board change Pruitt's job assignment from counselor to dean of students. Pruitt objected to the proposed job change, and she requested a promotion to the position of assistant principal. In September 2004, Pruitt was named as an assistant principal of NHS.

In June 2008, Superintendent Brown advertised a job opening for principal of Newport Junior High School ("NJHS"). Pruitt applied for the job, but Brown recommended that the school board hire a white female, Lisa Tennyson, for the job. The school board adopted Brown's recommendation.

By letter dated April 16, 2010, Superintendent Vondran informed Pruitt that she could

not remain as assistant principal because she had not obtained certification to work as a school administrator. *See* docket entry #13, Ex. #5, at 18. Vondran's letter to Pruitt states: "When you get your certification in 'Administration' then the school can report your position to the Department of Education as 'Assistant Principal.'" *Id*.

On April 19, 2010, Vondran recommended that the school board promote Becky Watkins, who is white, to the position of NHS principal. Vondran also recommended that the school board reassign Pruitt to the position of dean of students. The school board adopted Vondran's recommendations. In a letter to Vondran dated April 19, 2010, Pruitt stated, "I am writing to you because I am still upset that I keep getting looked over for a principalship." Docket entry #13, Ex. E.

In June and July 2010, Superintendent Bennett advertised a job vacancy for principal of NJHS. Mike Nichols, a white male, was hired for the job.

On December 9, 2010, Pruitt filed this action pursuant to 42 U.S.C. §§ 1981 and 1983, charging that the District discriminated against her on the basis of race by failing to promote her to vacant principal positions in June 2008, April 2010, and July 2010.

**III.**

To establish discrimination for failure to promote, Pruitt shoulders the burden to show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination. Because Pruitt presents no evidence that directly points to the presence of a discriminatory motive for the hiring decisions at issue, the Court will analyze her claims under

the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).[1] Accordingly, to establish a *prima facie* case of discrimination based on a failure to promote, Pruitt must show that (1) she was a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was not selected for the position; and (4) a similarly-situated employee who was not a member of her protected group was selected instead. *Allen v. Tobacco Superstore, Inc.* 475 F.3d 931, 937 (8th Cir. 2007)(citing *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996)).

If Pruitt establishes a *prima facie* case, the burden of production shifts to the District, which must rebut the presumption of discrimination with evidence that Pruitt was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once the District meets its burden, the burden shifts back to Pruitt to present evidence that the proffered reason is pretext for discrimination. *Id*.

**June 2008 Vacancy**

With respect to the June 2008 vacancy for principal of NJHS, the District argues that Pruitt is unable to make out a *prima facie* case of discrimination because, unlike Lisa Tennyson, Pruitt was not licensed as a school administrator. The Arkansas Department of Education ("ADE") requires that school administrators working in Arkansas school districts be licensed educators certified in administration. *See* docket entry #13, Ex. D. As a temporary alternative,

---

[1]The *McDonnell Douglas* burden-shifting analysis is applicable to claims brought under Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. *See Lockridge v. Board of Trustees of University of Arkansas,* 315 F.3d 1005, 1013 (8th Cir. 2003).

ADE rules provide that an individual who is not certified in administration can be employed in an administrative position for up to three years pursuant to an Administrator Licensure Completion Program ("ALCP").  *See id.*, 3.02.

It is undisputed that when Pruitt applied for the NJHS principal position in 2008, she had not obtained an administrator's license.  However, Pruitt points out that when she applied for job, she held the title of assistant principal–a position that requires either an administrator's license or participation in an ALCP.

According to the District, Pruitt was an assistant principal in name only.  The District presents the affidavit of Janie Freeman, who has served as the administrative assistant to the District's superintendent for over twenty-two years.  *See* docket entry #13, Ex. B.  Freeman testifies that on August 4, 2004, the school board approved hiring Randy Treat, a certified administrator, as assistant principal of NHS.  Pruitt complained to Superintendent Wilson that she had not been selected to fill the position of assistant principal, and he recommended that the school board give her the title and pay her the salary of an assistant principal.  Freeman testifies: "Since Ms. Pruitt did not have a Building Administrator's license, she was [given] the title of assistant principal but reported to the ADE as the Dean of Students."  Docket entry #13, Ex. B, at 3.  Freeman further testifies that Pruitt performed the duties assigned to the dean of students and that Superintendent Wilson and his successor, Superintendent Brown, "approved this method." *Id*.

Pruitt presents the affidavit of Terry Gibson, who testifies that he was hired as an assistant principal at NHS in 2006.  *See* docket entry #18, Ex. D.  Gibson testifies that Pruitt performed the duties of assistant principal.  Gibson states, "Although she may have been named

as the Dean of Students, she performed the same duties and responsibilities as me . . . . " *Id*. Additionally, Pruitt presents a copy of her application for an ACLP, which contains Superintendent Wilson's signature, dated July 14, 2004. Docket entry #18, Ex. D.

Viewing the record in a light most favorable to Pruitt, the Court finds that she has satisfied her *prima facie* burden to show that she possessed the minimum qualifications for the job.[2] Although the District contends that Pruitt was not a bona fide assistant principal, she has presented evidence that she was hired for the assistant principal's position pursuant to an ALCP and that she performed the duties of the job. Furthermore, it appears that the District paid Pruitt the salary of an assistant principal from September 2004 through April 2010, regardless of whether she met state licensure requirements.

The District contends that it denied Pruitt's application for principal in 2008 for a nondiscriminatory reason: She did not meet ADE licensure requirements. The Court finds that Pruitt has come forward with sufficient evidence of pretext. The District continued Pruitt's employment as a school administrator even after it rejected her application for the principal's job, and a reasonable jury could conclude that race, not the lack of an administrator's license, motivated the District's decision.

---

[2] It is inappropriate at the *prima facie* stage to weigh Pruitt's qualifications against Tennyson's. *See Turner v. Honeywell Federal Mfg. & Technologies*, LLC, 336 F.3d 716, 722 (8th Cir. 2003)(quoting *Hawkins v. Anheuser–Busch Inc.*, 697 F.2d 810, 813–14 (8th Cir.1983)("'The plaintiff need not prove [her] relative qualifications to meet [her] prima facie burden. To require such proof of relative qualifications at the *prima facie* stage of a case would undermine the *McDonnell Douglas* ... framework and 'collapse [its] three step analysis into a single initial step at which all issues would be resolved.'"); *see also Frost v. McDonald*, No. 5:08CV00078 JLH, 2009 WL 3634095, *4 (Nov. 2, 2009 E.D. Ark.)(citing *Lidge-Myrtil v. Dear & Co.*, 857 F. Supp. 666, 670 (W.D. Mo.1994)(quoting *Netterville v. State of Mo.*, 800 F.2d 798, 802-03 (8th Cir.1986)).

**April 2010 Vacancy**

With respect to the April 2010 principal vacancy, the District argues that Pruitt is unable to make out a *prima facie* case of discrimination because, unlike Becky Watkins, Pruitt was not licensed as a school administrator. The District contends that when it hired Watkins as NHS principal, it had not received documentation that Pruitt had obtained an initial administrator's license, and it had no record that she was placed on an ALCP. According to the District, Pruitt received her initial administrator's license on April 15, 2010, which it received on April 20, 2010. The District presents a copy of a license issued by the ADE, which indicates that Pruitt obtained her initial administrator's license on April 15, 2010.

In opposition to summary judgment, Pruitt testifies by affidavit that she informed Superintendent Vondran that she wanted the principal's job and that she was certified as a building administrator. Docket entry #18, Ex. A, ¶¶ 20, 22. Pruitt further testifies that she received her building administrator's license on January 1, 2009, *see* docket entry #18, Ex. A, ¶ 7, and she presents a copy of a license issued by the ADE, which indicates that she obtained a building administrators license, valid from January 1, 2009 through December 31, 2013. Docket entry #18, Ex. C.

Such conflicting evidence as to when Pruitt was licensed and when the District had knowledge of her licensure raises a genuine issue of material fact that disqualifies the matter as one for summary judgment.

**July 2010 Vacancy**

Regarding the July 2010 NJHS principal vacancy, the District asserts that Pruitt never applied for the position. Normally, to establish a *prima facie* case under a failure-to-promote

7

theory, a plaintiff must show that she applied for a promotion to a position for which she was qualified.

The undisputed evidence shows that the Larry Bennett was named as the District's superintendent on July 1, 2010, *see* docket entry #18, ¶ 23, and that Bennett posted the NJHS principal vacancy from June 11, 2010 to July 7, 2010. *Id.*, ¶ 23. By affidavit, Bennett testifies that Pruitt did not apply for the job. *See* docket entry #13, Ex. A. Citing her affidavit filed in opposition to summary judgment, Pruitt contends that she applied for the July 2010 vacancy, but she was never granted an interview. *See* docket entry #18, § 25. However, Pruitt's affidavit is void of any reference the July 2010 vacancy, and she testifies only that in April 2010, she informed Bennett's predecessor, Vondran, that she wanted to serve as a principal of the high school. *See* docket entry #18, ¶ 20. Pruitt presents no evidence that she submitted an application for the July 2010 vacancy for junior high school principal.

As an alternative argument, Pruitt states that the District was aware that she desired a promotion to a principal's position, and she believed that it would be a waste of her time to submit a formal application. Pruitt points out that the District had twice rejected her applications for principal positions, and she presents evidence that she is the only black administrator in the District. *See* docket entry #19, Ex. A, at 2.

The Eighth Circuit has approved a limited futility exception to the application requirement: "[I]n cases where the very discrimination alleged would have made it futile for the plaintiff to apply for the position in question, the plaintiff's failure to apply may be excused if she can show that in the absence of such discrimination she would have applied." *Culpepper v. Vilsack*, 664 F.3d 252, 257 (8th Cir. 2011)(citing *Int'l Bhd. of Teamsters v. United States*, 431

U.S. 324, 367–68, 97 S.Ct. 1843 (1977); *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1136 (8th Cir.2006).  Here, the evidence shows that Pruitt applied for an open principal position in April 2010, and she fails to testify that but for the District's alleged discriminatory practices, she would have applied for the July 2010 vacancy.   The Court finds that Pruitt has failed to present evidence that she is excused from the application requirement.  Accordingly, the District is entitled to summary judgment on Pruitt's failure-to-promote claim related to the July 2010 vacancy.

**IV.**

For the reasons stated, the Court finds genuine issues for trial as to Plaintiff's claims that Defendant failed to promote her to principal positions in June 2008 and April 2010 based on her race.  However, the Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's claim that Defendant failed to promote her in July 2010.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (docket entry #13) is  GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED THIS 23RD DAY OF MARCH, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE
